IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATINA M. H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-1855-M |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Latina M. H.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## **Background**

Plaintiff alleges that she is disabled due to several impairments, including "chronic headaches, pinch nerve left side, back issues, chronic pain, depression, circulation in feet, diabetic, eye problem blurred vision, sleep apnea, and stomach issues." Pl.'s Br. 4 (ECF No. 21); Administrative Record 73-74 ("A.R.") (ECF No. 16-1). After her applications for disability insurance benefits[2] and supplemental

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] "The Social Security Administration (SSA) determined that [Plaintiff] did not meet the insured status requirements for purposes of entitlement to disability insurance cash benefits. However, based on her

1

security income were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing took place in Dallas, Texas, on March 14, 2017. A.R. 29. At the time of the hearing, Plaintiff was 44 years old. *See id.* 41. She has a bachelor's degree, can communicate in English, and has past work experience as an admissions clerk and financial-aid specialist. *Id.* 40-41, 53.

The ALJ found that Plaintiff was not disabled and, therefore, not entitled to Medicare Qualified Government Employment benefits or supplemental security income. *Id.* 42. At step one of the five-step sequential evaluation,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since July 31, 2014. *Id.* 31. At steps two and three, the ALJ found that Plaintiff had the severe impairments of migraine headaches, lumbar and cervical spine degenerative disc disease, diabetes, and obesity; nonetheless, the ALJ found that her impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* 32-35. At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of "light

---

Medicare qualified government employment (MQGE), she meets the special insured requirements for Medicare purposes and could be entitled to Medicare Part A coverage if she were found disabled." A.R. 29.
[3] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

work" but determined that she could perform her past relevant work because it does not require engaging in work-related activities precluded by her RFC. *Id*. 36-42. At step five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was also capable of working as a document preparer, touch-up screener, and food and beverage order clerk—jobs that exist in significant numbers in the national economy. *Id*. 42.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. *Id*. 6. Plaintiff then filed this action in federal district court and argues the ALJ erred in finding her not disabled because (1) he failed to support his step-two rejection of her mental health impairments with substantial evidence, and (2) his RFC determination is not supported by substantial evidence since, though he credited Plaintiff's treating physician's opinion, he failed to incorporate portions of that opinion into his final RFC determination without explanation. Pl.'s Br. 4.

**Legal Standards**

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation

3

marks and citation omitted); *see also Copeland*, 771 F.3d at 923 (quoting *Perez*, 415 F.3d at 461) ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'"). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

## Analysis

### I.

Plaintiff first argues the ALJ erred because his "rejection of [Plaintiff's] mental health issues at Step Two" is not supported by substantial evidence. Pl.'s Br. 13. The Court finds, however, that substantial evidence supports the ALJ's step-two finding that Plaintiff's mental health impairments were not severe.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (defining "disability" for the purpose of obtaining disability

insurance benefits); *see also* 42 U.S.C. § 1382c(3)(A) (utilizing the same definition with respect to supplemental security income). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to *work,* irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000) (emphasis in original) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). ALJs must utilize "the 'special technique'" to evaluate mental impairments. *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (per curiam) (citing 20 C.F.R. § 404.1520a). The technique "requires an ALJ to rate the degree of functional limitation regarding each medically determinable mental impairment he finds." *Walker v. Colvin*, 2015 WL 5836263, at *11 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 404.1520a(a)). This is done by evaluating four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)). If the ALJ determines the plaintiff has mild or no limitation in the first three areas and no limitation in the fourth area, the impairment will be found not severe, "unless there is evidence that indicates that there is more than a minimal limitation in the ability to do basic work activities." *Id.* (citing 20 C.F.R. § 404.1520a(d)(1)); *see also Andrews v. Astrue*, 917 F. Supp. 2d 624, 635 (N.D. Tex. 2013) (citations omitted).

Plaintiff does not contend that the ALJ applied an improper standard in evaluating the severity of her mental impairments; rather, she argues the ALJ's

finding that Plaintiff's depression is not severe is unsupported by substantial evidence. Pl.'s Br. 13. As a result, she argues the ALJ further erred by not incorporating Plaintiff's mental impairments into her RFC. *Id*. 16. But the ALJ properly considered the four broad areas of mental functioning in determining Plaintiff's mental impairments to be non-severe and supported his findings with substantial evidence. A.R. 34. Specifically, the ALJ found that Plaintiff has "no limitation in understanding, remembering or applying information"; "no limitation in interacting with others"; "no limitation in concentrating, persisting, or maintaining pace"; and "no limitation in adapting or managing oneself." *Id*. In support of his finding that Plaintiff has no limitation in understanding, remembering, or applying information, the ALJ cites Plaintiff's testimony that she earned a bachelor's degree and can follow written instructions "okay" and spoken instructions well. *Id*. 34, 53, 226. The ALJ supports his finding that Plaintiff has no limitation in interacting with others by citing Plaintiff's testimony that she "spends time with others on the phone, goes out to eat, goes out to the movies, and watches her grandchildren play at the playground." *Id*. 34, 60-61. With respect to his finding that Plaintiff has no limitation in concentrating, persisting, or maintaining pace, the ALJ states that Plaintiff "reported she cannot pay attention long, 15 minutes at most, and does not finish what she starts," but he notes the medical evidence contains no findings substantiating any such limitation. *Id*. 34, 226. Last, the ALJ supports his finding that Plaintiff has no limitation in adapting or managing oneself with Plaintiff's testimony that she lives in an apartment by

6

herself, makes meals, gets help with her housework from her daughter, goes out alone, drives, shops, and manages her finances. *Id.* 34-35, 52-53, 58-61. Because the ALJ found that Plaintiff has no or mild limitation in any of the functional areas, and there is no evidence that her mental impairments "create any specific functional limitations regarding [her] ability to perform work related activities," he properly found her mental impairments non-severe. *Id.* 35.

Additionally, after reviewing the record, the ALJ concluded that there is no evidence that Plaintiff's mental impairments meet the program's durational requirement. *Id.* Though Plaintiff's treating, primary-care physician, Dr. Tamika L. Perry, D.O., diagnosed Plaintiff with depression on May 13, 2014, and treated her for "transient mental complaints . . . from the end of July through mid-September 2014," once Plaintiff "established care with Dr. Ramos, M.D., in September 2014, . . . she rarely, if ever, voiced mental complaints and was consistently within normal limits on mental status examination." *Id.* 33, 454. Plaintiff herself testified that she is prescribed medication for depression but no longer receives counseling, and, "on filing, she attributed any alleged functional limitations to physical rather than mental complaints." *Id.* 33, 56, 221-28. In her brief, Plaintiff asserts that she was treated for depression for more than 12 months and cites her Hickory Trail Hospital Psychiatric medical records from April 4, 2011, and Parkland Health medical records from December 11, 2015, April 27, 2016, and September 11, 2016. Pl.'s Br. 14; A.R. 651, 861, 883, 902. The Hickory Trail records,

7

however, are dated years before Plaintiff's onset date,[4] and, therefore, are not within the relevant period. The Parkland records are within the relevant period, but they fail to support any continuity of treatment because they only reference Plaintiff's depression as part of her past medical history. Because there is no evidence that Plaintiff's mental impairments lasted more than 12 months, the ALJ properly concluded that they did not meet the durational requirement under the Social Security Act, and are, therefore, not severe.

Further, the ALJ's determination that Plaintiff's mental impairments are non-severe is supported by substantial evidence, separate from the ALJ's evaluation of Plaintiff's mental impairments under the "technique" or any failure to meet the durational requirement. Substantial evidence under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. And an impairment is not severe where it does not interfere with an individual's ability to work. *See Loza*, 219 F.3d at 392; *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (per curiam) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace,* 813 F.2d at 59) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Here, the ALJ's conclusion that Plaintiff's mental impairments are not severe because they do not "create any specific functional limitations regarding [her] ability to perform work related activities," is supported by treating physician Dr. Perry's September 9, 2015 mental

---

[4] Plaintiff alleges disability beginning July 31, 2014. A.R. 29.

functional assessment questionnaire in which she stated "that [Plaintiff's] mental condition does not impose more than minimal limitations." A.R. 33, 586. The ALJ also noted that Dr. Perry's opinion is consistent with Plaintiff's new primary-care physician Dr. Nosheen Rizvi Shah, M.D.'s, treating notes and mental status examinations of Plaintiff. *Id.* 33-34. Plaintiff established care with Dr. Shah on September 15, 2015, and on that date, she noted that Plaintiff "ha[d] a normal mood and affect" and that "[h]er behavior [was] normal." *Id.* 788. Additionally, on March 4, 2015, treating neurologist Dr. Yong He, M.D.'s, mental status examination reports that Plaintiff "was alert and fully oriented. Her speech was clear and fluent. Naming, repetition, and calculations were intact. Her memory was 3/3. She followed all commands and was cooperative." *Id.* 33, 528. And the "State Agency psychologists reviewed [Plaintiff's] records and found that she had no 'severe' mental impairment." *Id.* 34, 75-80, 86. Accordingly, the Court finds substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe.

Though the ALJ's finding that Plaintiff's mental health impairments were non-severe is supported by substantial evidence, he still properly considered them in formulating Plaintiff's RFC, as required. *See Dodd v. Colvin*, 2014 WL 3738303, at *5 (N.D. Tex. July 29, 2014) (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996), *superseded by* SSR 16-3p 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)) ("The ALJ must also consider limitations and restrictions imposed by all of an individual's

impairments, even impairments that are not severe."). Though the ALJ was required to consider Plaintiff's non-severe impairments in formulating her RFC, he was "not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")). The ALJ "considered all 'severe' and non 'severe' impairments in formulating [Plaintiff's] . . . residual functional capacity." A.R. 35. Where appropriate, he "included limitations to address [Plaintiff's] non 'severe' impairments and subjective complaints." *Id.* Accordingly, the ALJ did not err by failing to incorporate any non-severe mental impairment in formulating Plaintiff's RFC.

## II.

Plaintiff next argues the ALJ erred because his "RFC determination is not supported by substantial evidence" since he "credit[ed] the opinion of Plaintiff's treating physician . . . [but] failed to incorporate portions of the opinion into his final RFC determination without explanation." Pl.'s Br. 16. However, the Court finds the ALJ properly considered the medical opinion evidence and assessed Plaintiff's RFC.

With respect to claims filed before March 27, 2017, the ALJ must evaluate medical opinion evidence in the manner prescribed by 20 C.F.R. § 404.1527. Under § 404.1527(a)(1), "[m]edical opinions are statements from acceptable medical

10

sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Acceptable medical sources include licensed physicians—both medical and osteopathic doctors—and licensed psychologists. 20 C.F.R. § 404.1502(a)(1)-(2). And a treating source "means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). "A treating source's medical opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Bentley v. Colvin*, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); citing *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000)). While, as Plaintiff points out, an "ALJ is not free to reject the uncontroverted opinions of a treating physician regarding the limitations imposed by Plaintiff's impairments solely because he has a different interpretation of the evidence," an ALJ may assign little or no weight to treating physicians' opinions for good cause. *Munoz v. Astrue*, 2010 WL 935452, at *8 (N.D. Tex. Feb. 22, 2010), *adopted by* 2010 WL 972261 (N.D. Tex. Mar. 16, 2010) (citing *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003) (per curiam)); *Newton*, 209 F.3d at 455-56 (citing *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994)). Good cause exists when "relative to other experts . . . the treating physician's evidence is conclusory,

11

is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton,* 209 F.3d at 456 (citing *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999); *Greenspan,* 38 F.3d at 237; *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103, 107 (2000)).

Unless controlling weight is given to a treating source's opinion per § 404.1527(c)(2), an ALJ must consider the following factors in determining the weight to give to "any medical opinion": (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship: length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors, including a medical source's amount of understanding of "our disability programs and their evidentiary requirements." 20 C.F.R. § 404.1527(c). Medical sources other than treating sources do not carry the same "considerable weight," but they still must be considered. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008) (per curiam) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

Here, the ALJ gave great weight in part and little weight in part to treating physician Dr. Perry's opinion. A.R. 40. Specifically, he gave "great weight to her opinion[ ] with regard to [Plaintiff's] exertional, postural, and manipulative

limitations . . . [and] defer[red] to the limitations she opined, finding nothing in the . . . objective medical evidence to outweigh them." *Id.* The ALJ, however, gave little weight to Dr. Perry's opinion that Plaintiff would "need three to four unscheduled breaks per day, and is likely to be absent three or four times a month," because he found it inconsistent with the routine, conservative treatment Plaintiff received and the diagnostic images and findings in the record. *Id.* Plaintiff points to no evidence in the record controverting the ALJ's assertion. *See* Pl.'s Br.; Pl.'s Reply (ECF No. 23). Because good cause exists when a treating physician's opinion is unsupported by the evidence, the Court finds the ALJ did not err in rejecting this opinion.

However, in assigning "little weight" to a treating source's opinion, or part of a treating source's opinion, the ALJ must analyze the factors under 20 C.F.R. § 404.1527(c); "'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).'" *Kneeland*, 850 F.3d at 760 (emphasis in original) (quoting *Newton*, 209 F.3d at 453) (noting that the regulation currently appears at 20 C.F.R. § 404.1527(c)(2)).

In this case, while the ALJ did not explicitly mention § 404.1527(c)'s factors in rejecting Dr. Perry's opinion regarding Plaintiff's need for additional breaks and absences, his explanation for doing so evidences that he considered them. The ALJ

13

gave "little weight" to that part of Dr. Perry's opinion, even though she was Plaintiff's "treating primary care physician," because "[s]he provided no evidentiary support for [it]," and "it is inconsistent with the routine, conservative treatment [Plaintiff received] as well as the diagnostic images and findings." A.R. 40. These reasons indicate that the ALJ considered Dr. Perry's examining relationship with Plaintiff; the support she presented for her opinion, in terms of objective evidence and explanation; and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(1), (3)-(4). The ALJ also mentioned that Dr. Perry was Plaintiff's "long-time primary care physician, who regularly treated [her] and who was familiar with her multiple impairments," which demonstrates that he considered the nature and extent of the treatment relationship and Dr. Perry's specialization. A.R. 40; 20 C.F.R. § 404.1527(c)(2), (5). It is clear, therefore, that the ALJ considered the regulatory factors and did not err in determining the weight to assign Dr. Perry's opinion.

Plaintiff asserts the ALJ erred in assigning little weight to Dr. Perry's opinion regarding Plaintiff's need for additional breaks and absences, and, therefore, contends that the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Br. 16-17. But "[i]t is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam)). "'[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh

14

their opinions and testimony accordingly.'" *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d. 1010, 1015 (N.D. Tex. 2012) (citing *Richardson*, 402 U.S. at 390). Substantial evidence in this context, "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Here, the ALJ did not reject Dr. Perry's opinion; rather, he gave her opinion great weight in part and little weight in part. A.R. 40. He gave great weight to her opinion regarding Plaintiff's "exertional, postural, and manipulative limitations" and deferred to the limitations she opined, "finding nothing in the . . . objective medical evidence to outweigh them." *Id.* Accordingly, the Court concludes substantial evidence supports Plaintiff's RFC to "perform less than the full range of 'light' work." *Id.* 36.

## Conclusion

The ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act. Therefore, the hearing decision is AFFIRMED in all respects.

Signed September 27, 2019.

_____
BARBARA M. G. LYNN
CHIEF JUDGE